IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH MEGWA, | § | |
| Petitioner, | § | |
| | § | 3:18-cv-0047-K (BT) |
| v. | § | 3:12-cr-0312-K (BT) (01) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Joseph Megwa ("Petitioner") filed this motion to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255 (Doc. No. 1). He also filed a motion for oral argument, (Doc. No. 9), an amended motion for oral argument, (Doc. No. 11), and an emergency motion for expedited consideration of his § 2255 petition. (Doc. No. 20). For the following reasons, the Court **DENIES** each of Petitioner's four motions.

I.

Petitioner was found guilty by a jury of conspiracy to commit healthcare fraud, in violation of 18 U.S.C. § 1349 (Count One); healthcare fraud, in violation of 18 U.S.C. §§ 1347 & 2 (Counts 2 through 4); and false statements relating to healthcare, in violation of 18 U.S.C. §§ 1035(a)(2) & 2 (Counts 5 through 8). The Court sentenced him to a total of 120 months' imprisonment. The Court also ordered Petitioner to pay restitution totaling $5,457,159.42. The Fifth Circuit affirmed the judgment on direct appeal, *United States v. Megwa*, 656 F. App'x 674 (5th Cir. 2016), and the Supreme

1

Court denied Petitioner's petition for certiorari review, 137 S. Ct. 670 (2017).

On January 8, 2018, Petitioner filed this § 2255 arguing:

1.     He received ineffective assistance of counsel when:

    (a)     counsel failed to file a motion for new trial based on newly discovered evidence;

    (b)     counsel failed to call a medical expert witness due to a failure to investigate;

    (c)     counsel failed to call a billing expert due to a failure to investigate; and

2.     He was denied due process because of the court's errors and wrongful forfeiture.

On March 23, 2018, Petitioner filed a motion for oral argument, and on May 1, 2019, he filed an amended motion for oral argument. On March 6, 2018, the Government filed its response. On July 8, 2020, Petitioner filed an emergency motion for expedited review of his § 2255 petition. As discussed below, Petitioner's motions are denied.

## II.

The following factual background is taken from the Fifth Circuit's opinion on direct appeal.

Dr. Megwa was employed as the medical director of PTM Healthcare Services ("PTM"), a company that provides home health care. PTM was owned by Ferguson Ikhile. In order to receive Medicare reimbursements, a home health provider must submit certain documents. One document, the OASIS form, details the patient's medical issues and must be signed by the company. Another document, the Plan of Care, or Form 485, outlines the course of treatment and must be approved and signed by a physician before the agency can receive reimbursements.

2

Under the ownership of Ikhile, PTM executed a home health care scheme that defrauded Medicare. Specifically, it recruited individuals to be patients, prepared forms that exaggerated those individuals' medical needs, and then had Dr. Megwa approve treatment. By exaggerating patients' medical problems, PTM was able to receive higher Medicare reimbursement amounts.

In October 2012, a grand jury indicted Megwa, Ikhile, and Ebolose Eghobor (the director of nursing at PTM). It charged Megwa with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, three counts of health care fraud in violation of 18 U.S.C. §§ 2, 1347 (which related to three specific claims PTM submitted to Medicare), and four counts of making false statements relating to health care matters in violation of 18 U.S.C. § 1035. Ikhile pled guilty and agreed to testify against the remaining two defendants.

On April 28, 2014, the case against Megwa and Eghobor proceeded to trial. The government's witnesses included Ikhile, two Medicare beneficiaries that PTM had recruited, several law enforcement agents, and Trudy Bell, a Medicare anti-fraud investigator. The jury heard evidence showing that Megwa's role as medical director was a sham, that he did not perform any of the duties for which he was purportedly paid, and that those payments were instead intended to reward him for signing falsified documents. The jury also heard testimony from purported patients of Dr. Megwa who had never met Megwa and did not know who he was. Additionally, the government provided evidence of numerous instances of Megwa billing Medicare for personally conducting home visits that supposedly took place on dates when Megwa was, in reality, out of the country.

The jury began deliberations on the afternoon of Tuesday, May 6, 2014. On the morning of the third day of deliberations, Monday, May 12, the jury sent a note providing:

> 1.    On several counts, the jury cannot reach a unanimous verdict on [sic]. How should we proceed? We have exhausted deliberations on these particular counts.

(This was the second jury note indicating that the jury was having difficulty reaching a unanimous verdict.) In response, the court decided to deliver an *Allen* charge. Eghobor objected, arguing that the *Allen* charge would be unduly prejudicial and coercive; Megwa joined in this objection. The court overruled the

objection. Eghobor also objected to the district court's proposed modification of the pattern *Allen* charge, which the court also overruled.

At approximately 4:45 pm, the jury returned its verdict. It convicted Dr. Megwa on all eight counts against him.

Megwa timely filed a post-verdict motion for acquittal, which the district court denied. Five months after trial, Eghobor filed a motion for a new trial based on newly discovered evidence under Federal Rule of Criminal Procedure 33. The evidence at issue was a recording of a conversation among Eghobor's wife, Ikhile, and Ikhile's wife, which took place about one year before trial. Megwa filed a one-page motion to join Eghobor's motion for a new trial. The court denied both motions and subsequently entered final judgment against both Megwa and Eghobor.

Both Megwa and Eghobor timely appealed. Eghobor's appeal was severed from Megwa's and was resolved in *United States v. Eghobor*, 812 F.3d 352 (5th Cir. 2015). Relevant to Megwa, Eghobor also challenged the *Allen* charge and the denial of a new trial under Rule 33. *Eghobor* rejected both challenges and fully affirmed Eghobor's conviction.

*Megwa*, 656 F. App'x at 676-77.

III.

1.   **Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, Petitioner must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense so gravely as to deprive him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls

4

within the wide range of reasonable professional assistance." *Id*.

Even if he proves his counsel's performance was deficient, a petitioner must still prove prejudice. To prove prejudice, a petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

A.    Motion for new trial

Petitioner argues his counsel was ineffective when counsel failed to file a motion for new trial based on newly discovered evidence and failed to investigate the content of the newly discovered evidence.

The record shows that co-defendant Eghobor filed a motion for a new trial based on newly discovered evidence, and Petitioner's counsel filed a motion to join this motion for new trial. (Crim. Case Doc. No. 292). The motion was based on a recorded conversation among Eghobor's wife, Ikhile, and Ikhile's wife, which took place about one year before trial. The Court denied Eghobor's motion and denied Petitioner's motion to join the motion for new trial. Both Eghobor and Petitioner appealed. The Fifth Circuit affirmed, finding the trial court did not abuse its discretion in denying

5

Eghobor's motion for new trial or Petitioner's "motion to join that doomed motion." *Megwa*, 656 F. App'x at 678.

Here, Petitioner argues his counsel's failure to file his own motion for new trial, instead of seeking to join Eghobor's motion for new trial, meant that counsel "failed [to] successfully enter into evidence a transcript and proper translation of the content of the audio recording[.]" (Doc. No. 1 at 11.) Petitioner also claims his defense attorney, Guy Womack, and the Fifth Circuit Court agreed that Mr. Womack was ineffective for failing to file a motion for new trial. (Doc. No. 2 at 13.)

Petitioner fails to establish he received ineffective assistance of counsel. Although he claims defense counsel failed to "enter into evidence a transcript and proper translation of the content of the audio recording," the record shows that a transcript of the recording was in fact entered into evidence. (*See* Crim. Case at Doc. No. 290-1). Further, Petitioner has failed to identify any improper translation of the recording.

Additionally, although Petitioner submitted a declaration from Dr. Kalu Diogu to support his claims, the declaration does not establish that his counsel was ineffective. Dr. Diogu states he is "a leader of the Nigerian community in United States as once the Chairman of the World Igbo Congress, the Apex organization of the Igbo people of Nigeria living in the United States." (Doc. No. 2 at 36.) Dr. Diogu states he has been "recognized by the United States Southern district Court of texas (sic), in

6

Houston, when I was one of a select leaders of the Igbo Community whom the court asked to give them guidance on resolving a case that involved Nigerians. The case number of that Case was: 4:14-cv-03213." (*Id.*) He states he has not met Petitioner, but he read the transcript of the newly discovered evidence and found the evidence "dispositive of the Conspiracy allegation theory. Specifically, a Nigerian jury would have found him not guilty based on the statement by the alleged co-conspirators which stated 'We don't know anything about Megwa. Megwa is an Ibo man.' The phrase Megwa is an Ibo man, would have been dispositive to a jury of peers in Nigeria. *Within the Nigerian community it will be unseemly because of the distrust amongst certain tribes in Nigeria for an Ibo to conspire with a non-Ibo tribes' man to commit a crime under this circumstance*." (*Id.* at 37.)

To the extent Petitioner argues that his counsel should have submitted this declaration from Dr. Diogu in support of his motion for new trial, he has failed to establish his counsel was ineffective. Dr. Diogu's opinion that Petitioner would not have conspired with his co-defendants in this case because it would be "unseemly" within the Nigerian community fails to undermine the Fifth Circuit's decision that a new trial is not warranted. As the Fifth Circuit stated, to the extent the new evidence was offered to impeach Ikhile's trial testimony, impeachment testimony does not support a new trial, *see Eghobor*, 812 F.3d at 363-64, and the declaration does not "plainly undercut" or "contradict" the direct evidence of Petitioner's "fraudulent

conduct." Thus, the evidence would not "probably produce an acquittal." *See id.*

Further, contrary to Petitioner's assertion that his defense attorney Guy Womack and the Fifth Circuit agreed that Mr. Womack was ineffective for failing to file a motion for new trial, neither Mr. Womack nor the Fifth Circuit agreed with this assertion. As stated above, the Fifth Circuit affirmed the trial court's decision to deny Eghobor's motion for new trial. In denying Eghobor's motion, the Fifth Circuit reviewed the newly discovered phone recordings and stated:

> The trial court did not abuse its discretion in denying Eghobor's motion for a new trial based on the recording of a conversation among Eghobor's wife, Ikhile, and Ikhile's wife. As to the third *Berry* factor, the statement does not have an "evidentiary purpose other than to impeach" trial testimony. *United States v. Villarreal,* 324 F.3d 319, 326 (5th Cir.2003). Eghobor argues that Ikhile's statements contained in the recording, which purportedly contradict Ikhile's trial testimony, are not merely impeaching because they show that Ikhile intentionally lied at trial and prove that he was biased against Eghobor. The case law, however, is against him. Evidence that "only casts doubt on the veracity" of a witness's testimony and "demonstrates a bias on the part of [that witness]" is "mere impeachment evidence" that is insufficient to entitle a defendant to a new trial. *United States v. Holmes,* 406 F.3d 337, 360 (5th Cir.2005); *see United States v. Garcia–Esparza,* 388 Fed. Appx. 407, 408 (5th Cir.2010) (per curiam) (noting that evidence introduced to show a witness "lied extensively on the witness stand . . . is impeaching and not a basis for a new trial"). Further, Eghobor has not explained how Ikhile's out-of-court statements, which were allegedly made in a parking lot, could have been admitted at trial except as a prior inconsistent statement offered for impeachment purposes only. *See United States v. St. Junius,* 739 F.3d 193, 202 (5th Cir.2013) (explaining that unsworn prior inconsistent statements may be used to impeach even if they are inadmissible as substantive evidence).
>
> As to the final *Berry* factor, the evidence would not "probably produce an acquittal." Eghobor focuses on two of Ikhile's statements from the recorded conversation but neither statement contradicts nor seriously undermines Ikhile's trial testimony. The first statement is Ikhile's one-word response, "Yeah," to a

8

lengthy, compound statement by Eghobor's wife, Bridget, in which she expresses distress over her husband's incarceration and concludes by saying, "Fred would never sign anything that is not correct."[6] But it is not at all clear whether Ikhile's response, "Yeah," was intended to show agreement with any of Bridget's preceding statement. Thus, Ikhile's response does not plainly undercut his trial testimony concerning Eghobor's fraudulent conduct.

In the second statement, Ikhile said, "Fred work [sic] for me. At no point did Fred ever give money to Megwa." Eghobor claims that this statement contradicts the trial testimony in which, according to Eghobor, Ikhile stated that Eghobor had given money to Dr. Megwa as part of their conspiracy. However, Ikhile made no such statement at trial. In the portion of the trial testimony Eghobor cites, Ikhile testified that although he recognized Eghobor's signature on a copy of a check written to Dr. Megwa that the government introduced at trial, he was not aware that Eghobor was writing checks to Dr. Megwa. Eghobor fails to explain how Ikhile's out-of-court statement that does not contradict Ikhile's lengthy trial testimony could probably produce an acquittal. The district court did not abuse its discretion in denying Eghobor's motion for a new trial based on the recording.

*Eghobor*, 812 F.3d at 363-64. Further, defense attorney Guy Womack stated, "[a]lthough I later joined Codefendant's motion for new trial premised on newly discovered evidence in this case, it was my opinion that the new evidence did not exonerate Dr. Megwa." (ECF No. 2 at 41).

Petitioner has failed to establish that he received ineffective assistance of counsel related to filing a motion for new trial based on newly discovered evidence and to investigating the content of the newly discovered evidence.

B.    Failure to call witnesses and submit evidence

Petitioner argues his counsel was ineffective for "failing to offer any Home Health Care Medical experts to rebut the Government's flawed theory that conflated the roles of a Home Health Medical Director and Medical Director for a Hospital,

Nursing Home, and Rehabilitation Facility," and failing to offer "his own billing expert witness in the field Home healthcare" who "would have easily attributed the errors in this case to a common mistakes made when filing a claim[.]" (Doc. No. 2 at 19, 28.) Petitioner also submitted a declaration from his defense attorney Guy Womack stating, "I now believe I erred in not having called a Physician expert witness and a billing expert to rebut the Government's theory of the case." (*Id*. at 41.)

Petitioner, however, has failed to submit any declaration or other evidence from a home healthcare medical expert or a home healthcare billing expert that they would have testified at trial, and their testimony would have been favorable to the defense. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating that to establish the requisite *Strickland* prejudice, the petitioner must show that the testimony would have been favorable and that the witness would have testified at trial); *Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ[.]"). He has, therefore, failed to establish ineffective assistance of counsel.

Petitioner also claims "defense counsel was deficient for failing to introduce into evidence a Department of Health and Human Services, Inspector General's June 1995, OEI-02-94-00170 and December 2001, OEI-02-00-00620, which describes the physicians' practices in prescribing, certifying, and monitoring Medicare home health services within the context of the Centers for Medicare and Medicaid Services'

expectations." (Doc. No. at 22.) He claims this evidence "showed that Megwa was not a sham and he complied with his role as gatekeeper of the Agency Inspector General's December 2001 OEI-02-00-00620 and provided the services outlined in the Inspector General's June 1995, OEI-02-94-00170." (*Id*. at 23.) Petitioner further claims his counsel should have investigated materials from the Health and Human Services Inspector General that would have assisted counsel in cross-examining the Government's expert witness.

Petitioner's claims do not show that his counsel was constitutionally ineffective. He fails to show how these documents negate the evidence that he committed the criminal offenses. On direct appeal, the Fifth Circuit determined there was sufficient evidence to find Petitioner guilty of each offense, finding that "ample evidence supports the jury's finding that Megwa willfully joined the conspiracy, with the intent to further its unlawful purpose," that the "evidence sufficed for a reasonable jury to find that Megwa had engaged in healthcare fraud," and that the "evidence supported the jury's guilty verdict" that Megwa made false statements relating to healthcare matters. *Megwa*, 656 F. App'x at 680. Petitioner has failed to establish that but for his counsel's failure to investigate these documents, or submit these documents into evidence, there is a reasonable probability that the result of the proceedings would have been different.

2.   **Restitution/Forfeiture**

Petitioner claims he was denied due process when the Court ordered him to pay

$5,457,159.42 in restitution because he received only about $20,500 in revenue for the years he provided services to PTM. Claims challenging restitution, however, are not cognizable under § 2255. *See United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999) ("[C]omplaints concerning restitution may not be addressed in [Section] 2255 proceedings."); *United States v. Segler*, 37 F.3d 1131, 1135 (5th Cir. 1994) (same). These claims are therefore denied.

### 3.    Oral Argument

Petitioner seeks oral argument on his § 2255 petition. He states oral argument is necessary due to "novel questions of law regarding ineffective assistance of counsel, especially, as the trial attorney in this case has essentially conceded that he was ineffective," that "oral argument will provide a forum for the parties to elaborate on and clarify their arguments," and that he "strongly requests an opportunity to address [the] pervasive Racial and National Origin Animus by [the] Government Lawyer in an Oral setting." (Doc. No. 11 at 1-5.)

The Court finds oral argument is not necessary in this case. The case does not present novel claims, habeas counsel has thoroughly briefed the claims, and the declarations by defense counsel Guy Womack and Dr. Diogu clearly state their opinions and conclusions and the basis for their opinions and conclusions.

Further, the Government's attorney did not express racial or national origin animus against Petitioner or his declarants. In its response to the § 2255 motion, the Government stated the following:

> In his declaration, Dr. Kalu Kalu Diogu self-identifies as "a leader of the Nigerian community in United States as once the Chairman of the World Igbo Congress, the Apex organization of the Igbo people of Nigeria living in the United States." (CV No. 2 at 36.) Dr. Diogu provides no residential or business address and does not explain how he became involved in this case, despite proffering a "dispositive" opinion on Megwa's guilt that is based on his "personal knowledge, except where expressly noted otherwise"; acknowledging that he has "never met Dr. Megwa"; and expressing that he "feel[s] that [it] is [his] responsibility to assist the Court in arriving at the truth in this matter." (*Id.* at 37.) Dr. Diogu claims to have "been recognized by the United States Southern [D]istrict Court of Texas" in Case No. 4:14-CV-3213 and "was one of a select leaders [sic] of the Igbo Community whom the court asked to give them guidance on resolving a case that involved Nigerians." (*Id.*) Dr. Diogu provides no details of the case or his role in it. The government reviewed the case's docket on PACER and obtained the district court's findings of fact and conclusions of law. (*See* Govt.'s App. at 001-010.)   The case involved civil claims for federal trademark infringement, trademark dilution, and false advertising. (*Id.* at 001.) The district court's findings on the "dispositive issue" cited the testimony of several witnesses, but Dr. Diogu was not one of them. (*Id.* at 004.)
>
> n.1 The undersigned performed an online search in an attempt to identify Dr. Kalu Kalu Diogu and learned that he may be the father of Megwa's current counsel, Diogu Kalu Diogu II. In an email exchange, the undersigned asked attorney Diogu whether he had any relationship to Dr. Kalu Kalu Diogu, but attorney Diogu refused to answer the question.

(ECF No. 7 at 10-11.)

Petitioner does not explain how these comments reflect racial or national origin animus. His conclusory claims do not establish that an oral hearing is warranted.

**4.   Expedited Consideration**

13

Petitioner also filed a motion for expedited consideration of his § 2255 motion. He alleges two cases support his claims that counsel was ineffective when counsel failed to conduct a proper investigation and failed to discover the new phone call evidence. First, in *United States v. Shepherd*, 880 F.3d 734 (5th Cir. 2018), the Fifth Circuit found defense counsel was ineffective when counsel advised his client to plead guilty to failure to register as a sex offender even though the defendant's out-of-state indecency convictions did not require him to register under Texas law. The Court found defense counsel failed to research the case law or discuss the case with Texas Department of Public Safety officials, which would have informed counsel that the defendant was not required to register in Texas. Second Petitioner cites *Andrus v. Texas*, — U.S. —, 140 S. Ct. 1875 (2020), in which the Supreme Court found defense counsel ineffective where counsel failed to investigate or present mitigation evidence in a death penalty trial. The Court stated the available mitigation "evidence revealed a childhood marked by extreme neglect and privation, a family environment filled with violence and abuse," *Id*. at 1879, and that counsel instead offered "seemingly *aggravating* evidence" instead. *Id*. at 1883.

These cases do not support Petitioner's claims. He has failed to show his counsel's investigation was ineffective or explain how counsel could have discovered the new evidence of the recording prior to trial. As Petitioner states in his brief, the phone recording was discovered when, "on August 11, 2014, approximately three

14

months after the conclusion of Applicant's trial, counsel for Co-Defendant Fred Eghobor was contacted by Bridget Eghobor, wife of the Co- Defendant ("Mrs. Eghobor"). Mrs. Eghobor informed Co-Defendant's counsel that she had discovered two partial recordings made on March 23, 2013 of a single conversation she had with Ferguson Ikhile and his wife Christina Ikhile." (Doc. No. 2 at 11.) His conclusory claims are without merit. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

Finally, although Petitioner complains of the delay in the determination of his claims and seeks expedited review, the Court has considered Petitioner's claims in due course.  Petitioner's motion is therefore denied.

IV.

For the foregoing reasons, the motion to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255, the motions for oral argument, and the emergency motion for expedited consideration of his § 2255 petition are **DENIED**.

SO ORDERED.

Signed July 28th, 2020.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE